IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WALTON CUDE | § | |
| Plaintiff | § § § | |
| V. | § § | CIVIL ACTION NO. 2:19cv388 |
| AEP TEXAS INC. | § § § | |
| Defendant | § | |

## DEFENDANT AEP TEXAS INC.'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF PLAINTIFF'S EXPERT, BILL WINKFEIN

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Defendant AEP Texas Inc. ("AEP"), Defendant in the above entitled and numbered cause and files this its Motion to Exclude the Expert Testimony of Plaintiff's Expert, Bill Winkfein ("Mr. Winkfein"), and would respectfully show unto the Court as follows:

## I.
## BACKGROUND

This suit arises from a fire at the Plaintiff's residence in Sandia, Texas (in the Arrowhead subdivision on Lake Corpus Christi) that occurred on November 19, 2017, approximately 2-1/2 months after Hurricane Harvey made landfall in the Coastal Bend. Shortly after Hurricane Harvey, on September 10, 2017, AEP Texas replaced the service pole next to the Plaintiff's residence. According to the Plaintiff, on November 19, 2017, at approximately 4:00 a.m., the Plaintiff was asleep when he awoke to a loud spewing noise and saw flames shooting out of the utility room. As he exited the house he stated that he saw electrical supply wires (commonly known as a Triplex) arcing and sparking. The Triplex supply wires, also commonly known in the utility industry as a

60.407 Cude
Pldgs/AEP's Mtn to Exclude
Expert Test. Of B. Winkfein

Page 1

service drop, connect the customer's home to the utility pole which carries the utility's energized wires.

According to Mr. Winkfein, he personally inspected the entire house and replaced all switches and receptacles after the Plaintiff purchased the home in 2011. He further installed a new main electrical panel and a home surge protection device. According to Mr. Winkfein, the fire started in the Triplex wire which was suspended from the electric service entrance of the Plaintiff's home (where the meter and Plaintiff's breaker box are mounted) to the service pole that had been replaced 2-1/2 months prior. Mr. Winkfein speculates that when the service pole was replaced, the Triplex was mechanically stretched beyond its limits, which damaged the insulation and/or the wire inside. As a result, according to Mr. Winkfein, the insulation on the Triplex was cracked and allowed the wires to arc, causing the sparks that caused the fire.

Although Mr. Winkfein is a certified electrician, he is not qualified as an expert in fire cause and origin and has no expertise in the design, construction, maintenance or operation of high voltage power lines used by electrical utilities such as AEP Texas. He should accordingly be excluded as an expert in this matter.

## II.
## DAUBERT STANDARD

Defendant moves this Court to exclude the testimony of Mr. Winkfein because his opinions are conclusory, unsubstantiated, and lack the requisite reliability to satisfy the requirements of Federal Rule of Evidence 702, as interpreted by the United States Supreme Court in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993).

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony and provides that a witness "who is qualified as an expert by knowledge, skill, experience, training, or

60.407 Cude
Pldgs/AEP's Mtn to Exclude
Expert Test. Of B. Winkfein

Page 2

education may testify in the form of an opinion." Fed. R. Evid. 702. Before allowing an expert to testify, a court must find that the following criteria have been met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based upon sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case. *Id.*

The district court must make a preliminary inquiry into whether proposed expert testimony is relevant and reliable and in doing so, acts as a "gatekeeper" of expert witness testimony. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

Rule 702 provides that a witness may offer "an expert opinion only if he or she draws on some special 'knowledge, skill, experience, training, or education' to formulate that opinion." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). Under Rule 702, expert testimony must "assist the trier of fact to understand the evidence or determine a fact in issue." *Bocanegra v. Vicmar Services*, 320 F.3d 581, 584 (5th Cir. 2003). Relevant evidence is evidence "which has 'any tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002).

The reliability requirements of Rule 702 reflect the considerations set forth in *Daubert*. To guide this inquiry into reliability, the *Daubert* Court set forth a non-exhaustive list of factors that the district court should consider in connection with proposed expert testimony. This includes "whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community." *Daubert*, 509

60.407 Cude
Pldgs/AEP's Mtn to Exclude
Expert Test. Of B. Winkfein

Page 3

U.S. at 593-94. Although the proponent of expert testimony need not show that the expert's conclusions are correct, he must show, by preponderance of the evidence, that the proposed testimony is reliable. *Moore v. Ashland Chemical, Inc.,* 151 F.3d 269, 276 (5th Cir. 1998).

Courts have recognized that it is "not so" simply because "an expert says it is so." See *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 421 (5th Cir. 1987). When the expert "br[ings] to court little more than his credentials and a subjective opinion, "this is not evidence that would support a judgment." *Id.* at 421-422. The Fifth Circuit in *Viterbo* affirmed a summary judgment and the exclusion of expert testimony that was unreliable, holding that "[i]f an opinion is fundamentally unsupported, then it offers no expert assistance to the jury." *Id.* at 422; see also *General Electric Company v. Joiner,* 522 U.S. 136, 118 S.Ct. 512-519 (1997) (nothing requires court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert as the court may conclude too great an analytical gap exists between data and opinion proffered). Thus, if an expert's opinion merely sets forth conclusions without any indication of how those conclusions were reached, the expert's opinion will be of no assistance to the trier of fact. Expert testimony "must be reliable at each and every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia.*" *Knight v. Kirby Inland Marine, Inc.,* 482 F.3d 347, 355 (5th Cir. 2007).

Because many factors can cause a fire, courts require a valid expert opinion in order to make a prima facie case of cause and origin. Mr. Winkfein's opinions must pass the reliability and validity tests of Rule 702. Each of his opinions purports to address a cause and effect relationship that resulted in the fire. Such relationships must depend upon scientific principles that can be tested and which, if true, can be peer reviewed and gain acceptance in a relevant scientific

60.407 Cude
Pldgs/AEP's Mtn to Exclude
Expert Test. Of B. Winkfein

Page 4

community. Additionally, those opinions must be based upon existing standards in the industry and absent testing and acceptance, the opinions must be viewed as scientifically unsound and unreliable. Such a situation exists here.

## III.
## EXHIBITS IN SUPPORT OF MOTION

The following exhibits are attached in support of this motion and are incorporated by reference:

- A.) Deposition Transcript of Bill Winkfein;
- B.) Winkfein's first report;
- C.) Winkfein's second report;
- D.) Report of Ricardo Torres;
- E.) Report of Dr. Don Russell.

## IV.
## MR. WINKFEIN IS NOT QUALIFIED AS AN EXPERT

Mr. Winkfein is not qualified to offer opinions regarding fire cause and origin because he does not possess the requisite knowledge, skills, experience, training, or education regarding fire cause and origin investigation or the design, construction, maintenance, or operation of high voltage power lines used by electrical utilities. Although Mr. Winkfein professes to have a master electrician's license,[1] he further contends that he has degrees in electrical engineering from the University of Tennessee, although he has not produced copies of such diplomas as requested in deposition. Even if Mr. Winkfein does possess degrees as he has testified, he has never worked as an engineer for more than three months and has never been a registered professional engineer.[2] He also has never worked for an electric utility or as a firefighter, and he has no certification in fire investigations.[3] Further, he has never testified as an expert in a case before, and this is the first

---

[1] Exhibit A, page 11/19-13/6.
[2] *Id.* at 184/15-185/13.
[3] *Id.* at 185/14-20.

60.407 Cude
Pldgs/AEP's Mtn to Exclude
Expert Test. Of B. Winkfein

Page 5

time he has ever been deposed.[4] When asked whether he considered himself an expert in the National Electric Code (NEC), he replied that he used to be but doesn't go through the book as much as he used to and doesn't study it that often anymore.[5] He does not consider himself an expert in the National Electrical Safety Code (NESC), the applicable standard to Defendant's facilities in this case. Mr. Winkfein even admits that he doesn't know the difference between the NEC and the NESC.[6]

"The National Electrical Safety Code (NESC) is a United States standard for the safe installation, operation, and maintenance of electric power and communication utility systems including power substations, power and communication overhead lines, and power and communication underground lines." *Jasinski v. Public Utility Commission of Texas and Oncor Electric Delivery Co. LLC*, No. 03-16-00725-CV, 2017 WL 2628071 n.3 (Tex. App.-Austin June 14, 2017) (mem. op.). In *Childs v. Entergy Mississippi, Inc.*, No. 2:08CV77-P-A, 2009 WL 2508128 (N.D. Miss. Aug. 13, 2009), a case against an electrical utility, the court excluded the testimony of a master electrician and electrical contractor because his testimony lacked reliability due to his ignorance of the National Electrical Safety Code (NESC), the national standard to which public utilities adhere.

Mr. Winkfein is further unaware of what a utility's tariff is and represents.[7] An electric utility's tariff is a schedule containing all rates and charges, the rules and regulations of the utility, and any contracts that affect rates, charges, and terms of conditions of service. *Jasinski*, 2017 WL 2628071 at n. 11. A utility's filed tariff, approved by the Public Utility Commission, is more than a mere contract, rather, it governs a utility's relationship with its customers and has the force and

---

[4] *Id.* at 188/8-14.
[5] *Id.* at 186/22-187/2.
[6] *Id.* at 187/6-188/7.
[7] *Id.* at 151/14-18.

60.407 Cude
Pldgs/AEP's Mtn to Exclude
Expert Test. Of B. Winkfein

Page 6

effect of law until suspended or set aside. *Southwestern Electric Power Co. v. Grant*, 73 S.W.3d 211, 217 (Tex. 2002).

In contrast to Mr. Winkfein, Defendant's expert, Dr. Don Russell, a distinguished professor of electrical engineering at Texas A&M University, has referenced both the NESC and AEP's tariff and its applicability in this matter in his report, and has confirmed that the Triplex, conductors, and transformer at issue in this case were all in compliance with the NESC and AEP's tariff.[8]

Mr. Winkfein claims that the transformer that was supplying his client's residence was not properly grounded nor fused, but only cites a provision of the NEC in support of that opinion.[9] However, when confronted with Article 90.2 from the introduction to the NEC, he admits that standard does not cover installations under the exclusive control of an electrical utility.[10]

In addition to admitting that he applied the incorrect code to a utility installation, when examined concerning the methodology set forth in NFPA 921 (National Fire Protection Association 921, Guide for Fire & Explosion Investigations), which is the standard applicable to fire cause and origin investigation, Mr. Winkfein admitted that he had no idea what NFPA 921 was.[11]

"In determining whether an expert's methodology is sufficiently reliable, *Daubert* asks, among other things, whether the expert's methodology can be controlled by standards, and whether the theory or methodology is generally accepted within the scientific community." *Atlantic Specialty Ins. Co. v. Porter, Inc.*, No. 15-570, 2016 WL 6126062 at *5 (E.D. La. Oct. 20, 2016). Courts agree that the peer-reviewed NFPA 921 embodies the standards of the field of fire

---

[8] Exhibit E, pages 8, 10.
[9] Exhibit C, page 3.
[10] Exhibit A, 172/3-174/11, 207/21-25.
[11] Exhibit A at 165/18-166/2.

60.407 Cude
Pldgs/AEP's Mtn to Exclude
Expert Test. Of B. Winkfein

Page 7

investigation and causation. *Id.*; *Allstate Ins. Co. v. Helmsco, Inc.*, No. 6:15-CV-114, 2016 WL 3232726 at *2 (W.D. Tex. Feb. 16, 2016); *see also Johnson v. Samsung Electric Am., Inc.*, 227 F.R.D. 161, 165-66 (E.D. La 2011); *Butcher v. Allstate Ins. Co.*, No. 06-423, 2009 WL 301822 at *3 (S.D. Miss. Feb. 5, 2009) ("It is well recognized that [NFPA 921] is the most generally accepted standard for methodology for [fire scene investigation]"); *Travelers Prop. & Cas. Corp. v. General Electric Co.*, 150 F.Supp.2d 360, 366 (D. Conn. 2001) (noting that NFPA 921 is "a peer reviewed and generally accepted standard in the fire investigation community").

NFPA 921 states that in order to apply the Scientific Method to fire incident investigation, the investigator must follow seven steps: (1) identify the problem; (2) define the problem; (3) collect data; (4) analyze the data; (5) develop a hypothesis; (6) test the hypothesis; and (7) select the final hypothesis. *Atlantic Specialty Ins.*, 2016 WL 6126062 at *5 (citing *National Fire Protection Association 921: Guide for Fire and Explosion Investigation*, 19, (2014)). NFPA 921 devotes an entire chapter to fires allegedly caused by electricity. *Id.* NFPA 921 states that before a fire can properly be determined to have been caused by electricity, the source of heat, the temperature generated, the first ignited fuel, and the path of transfer from the heat source and the ignited fuel must be calculated or identified. *Id.* "[T]he NFPA cautions that the investigator must be careful not to assume that abnormal electrical activity or damage (like arcing) is evidence that the fire was caused by electricity, because this damage can be both the cause of the fire or a result of the fire." *Id.* "According to the NFPA 921 method, the cause of a fire is generally not known until the end of the investigation and after the investigator has eliminated all other theoretical causes." *Jackson v. Black & Decker (US), Inc.*, No. 4:06-CV-190-Y, 2008 WL 8973216 at n.3 (N.D. Tex. March 10, 2008).

60.407 Cude
Pldgs/AEP's Mtn to Exclude
Expert Test. Of B. Winkfein

Page 8

Defense experts Dr. Don Russell and Ricardo Torres both quote and adhere to NFPA 921 in their expert reports, but Mr. Winkfein did not adhere to any of the standards or follow any of the steps set forth therein for fire investigation, presumably because he had never heard of such standards.

An examination of Mr. Winkfein's methodology in determining the cause of the fire is telling. When asked to explain how he came to his opinions, he explained he looked at the area around the house after the fire and found melted Triplex in the driveway.[12] Additionally, he walked around the fire scene and observed through the ashes that there was nothing left.[13] He reiterated that was the extent of his examination of the fire scene.[14] What is clear, however, is that he came to his conclusions without eliminating other possible causes.[15] Mr. Winkfein did not take any photos as he doesn't take pictures.[16] Nor did he take (or analyze) any samples or sift through any of the debris at the fire scene. The reports produced by Mr. Winkfein do not include any scene photos, diagrams, witness statements, or notes.[17] Mr. Winkfein does not provide any data to support his conclusion that the arcing in the Triplex caused the fire in question. He has not attempted to calculate the amperage that would be required or that actually did cause the alleged arcing.[18]

In *Portillo v. Sears Roebuck and Company,* EP-13-CV-369-PRM, 2014 WL 12591734 (W.D. Tex. Sept. 17, 2014) the court considered the defendants' motion to strike the opinions of a state-certified fire investigator with the El Paso Fire Department. The defendants asserted that the investigator's opinions were not reliable because they did not comport with NFPA 921. The court

---

[12] *Id.* at page 72/25-73/9.
[13] *Id.* at page 89/5-9.
[14] *Id.* at page 165/8-17.
[15] *Id.* at page 166/16-21.
[16] *Id.* at page 56/13-18.
[17] Exhibit B, Exhibit C.
[18] Exhibit A, page 162/16-163/20; page 176/8-19; page 179/1-3.

60.407 Cude
Pldgs/AEP's Mtn to Exclude
Expert Test. Of B. Winkfein

Page 9

concluded that the opinions were not reliable because they were speculative and conclusory. The court further commented that without NFPA 921, "the court has no standard by which to evaluate his investigation and have confidence in its result." *Id.* at n. 8.

In *Atlantic Specialty Ins. Co. v. Porter, Inc.*, No. 15-570, 2016 WL 6126062 (E.D. La. Oct. 20, 2016) the defendant filed a motion to strike the report and testimony of the plaintiff's expert witness. The court considered whether the expert's conclusions on fire causation were unreliable and not in conformance with NFPA 921. The court concluded that the expert's report lacked critical data and without such, the "proposed cause of the fire was nothing more than a possibility rooted in speculation." *Id.* at *6. The court went further stating: "The data that [plaintiff's expert] does possess and rely on, the electrical activity and damage in some of the electrical connections, is at best equally consistent with being the cause of the fire and an effect of the fire, and at worst more likely evidence of an effect of the fire." *Id.* (Citing NFPA 921 at 109).

Mr. Winkfein has admitted his ignorance of the NESC, NFPA 921, and the tariff, standards critical to determining fire causation and the proper practices of an electrical utility. His lack of expertise in these subjects is fatal to his ability to aid the trier of fact. Likewise, his professed expertise in the NEC, even if true, is inapplicable to Defendant's installation, and, therefore, of no assistance to the trier of fact.

## V.
## MR. WINKFEIN'S OPINIONS ARE INCOMPLETE AND UNRELIABLE AND MUST BE EXCLUDED

An examination of Mr. Winkfein's deposition transcript indicates he contradicted many of the opinions set forth in his report. For instance, on page 3 of his second report, he states that the Triplex was mechanically stretched while it was being replaced, damaging the insulation and/or the wires inside. He further stated that this was plain to see from the photographs he had been

60.407 Cude
Pldgs/AEP's Mtn to Exclude
Expert Test. Of B. Winkfein

Page 10

shown.[19] However, when questioned concerning the photos he referenced, he testified he could not see damaged insulation in the photo.[20] His explanation then changed based upon his speculation that the insulation was cracked because the photo seemed to show that the Triplex was stretched too tight.[21] Additionally, that same page of his report states that the allegedly stretched Triplex was not a problem until two months after its installation when gale force winds began blowing the wires around and the wire/insulation began to arc and spark.[22] But, he admitted during his testimony that he had no idea what the winds were like on the night of the fire and changed his testimony to state that the arcing had nothing to do with the winds.[23]

Mr. Winkfein further states in his report that the transformer serving the Plaintiff's residence was not properly grounded nor fused.[24] However, on cross-examination he admitted that he knew the transformer was grounded, but now claims that it was grounded incorrectly.[25] He further admitted that the transformer had an internal fuse because it is a CSP (completely self-protected) transformer.[26] He also makes the statement at the end of his second report that had this supplying transformer been equipped with the proper ground wire and ground rod, the fire would have never happened.[27] When asked in his deposition if a proper ground on the pole would have helped the situation, he replied no.[28]

According to Mr. Winkfein, the arcing that started the fire began in the Triplex which was suspended from the service pole and the connection to the Plaintiff's meter, about 20 feet from the

---

[19] Exhibit C, page 3.
[20] Exhibit A, page 158/25-159/11.
[21] *Id.* at page 159/12-160/2.
[22] Exhibit C, page 3.
[23] *Id.* at page 160/6-161/25.
[24] Exhibit C, page 3.
[25] Exhibit A, page 169/22-170/21.
[26] *Id.* at page 166/22-167/3; page 168/10-13.
[27] Exhibit C, page 4.
[28] *Id.* at page 94/10-16.

60.407 Cude
Pldgs/AEP's Mtn to Exclude
Expert Test. Of B. Winkfein

Page 11

latter connection.[29] According to Mr. Winkfein's report, no faults or short circuits inside the residence would have caused the arcing that started this fire.[30] He claimed that any arcing that would have started in the house would have tripped the breakers and cut off the electricity to everything inside the house.[31] However, at deposition Mr. Winkfein agreed with defense expert Ricardo Torres that if a fault had originated in the Triplex wires there would have been no damage to the house itself.[32] This contradicts his theory and other deposition testimony that the fire that started on the Triplex ignited everything inside the breaker panel and "burned everything," sending electricity through all of the conductors and circuits going through the house.[33]

Another mystery left unanswered is why, if Mr. Winkfein had installed a surge protector in the breaker box as he states in his second report, which is supposed to trip the main breaker if there is any type of surge of electricity, it didn't function as designed.[34] And although Mr. Winkfein claims that a surge of electricity went into the house, he cannot explain why the surge protector did nothing to protect the home from electricity that he claims would have been entering from the arcing Triplex outside the home.[35]

When questioned concerning the discrepancies in his report and his deposition, he explained that he did not write his report, that the Plaintiff, Mr. Cude, wrote it and typed it up for him, and he signed after skimming through it.[36] The many contradictions in his reports and testimony make it clear that his testimony is simply unreliable. His testimony exposes the analytical gap between the facts and his proffered opinions, and his lack of knowledge of the

---

[29] Exhibit B, page 3; Exhibit A, page 157/13-20.
[30] Exhibit A, page 105/25-106/9.
[31] *Id.* at page 106/10-23.
[32] *Id.* at page 106/24-107/13.
[33] *Id.* at page 156/8-20.
[34] *Id.* at page 136/22-137/17.
[35] *Id.* at page 164/15-165/7.
[36] *Id.* at pages 146/18-147/2; 161/1-9.

60.407 Cude
Pldgs/AEP's Mtn to Exclude
Expert Test. Of B. Winkfein

Page 12

standards of fire causation and utility practice rendered those opinions scientifically unsound and unreliable.

## VI.
## CONCLUSION

Mr. Winkfein has not met the reliability requirements of *Daubert* with respect to his opinions on the cause and origin of the fire in question. He is not qualified to give the opinions he has regarding the cause of the fire, has never testified as an expert before, and has never worked for an electric utility. Further, his opinions complete ignore the recognized standards of the National Electrical Safety Code and NFPA 921, and the contradictions between his reports and his testimony are various and significant. Mr. Winkfein admitted that the reports were authored by the Plaintiff in this matter and only skimmed by Mr. Winkfein before signing.

It is clear that Mr. Winkfein did not do a reliable investigation into the cause and origin of this fire. This only highlights the national standard of NFPA which "cautions that the investigator must be careful not to assume that abnormal electrical activity or damage (like arcing) is evidence that the fire was caused by electricity, because this damage can be both the cause of the fire or a result of the fire." *Atlantic Specialty Ins. Co.*, 2016 WL 6126062 at *5. The data that Winkfein relies upon, the electrical activity and the damage he observed to the house, "is at best equally consistent with being the cause of the fire and an effect of the fire, and at worst more likely evidence of an effect of the fire." *Id.* at *6.

WHEREFORE, PREMISES CONSIDERED, Defendant AEP Texas Inc. prays that this Court grant its Motion to Exclude the Expert Report and Testimony of Bill Winkfein from the trial of this matter, and that AEP has all other relief, in law and in equity, to which it shall be justly entitled.

60.407 Cude
Pldgs/AEP's Mtn to Exclude
Expert Test. Of B. Winkfein

Page 13

Respectfully submitted,

SCHAUER & SIMANK, P.C.
615 N. Upper Broadway, Suite 700
Corpus Christi, Texas 78401-0781
Ph   : 361.884.2800
Fax  : 361.884.2822

By: /s/ G. Don Schauer
   G. Don Schauer
   State Bar No. 17733298
   Federal ID No.: 7641
   dschauer@cctxlaw.com
   Ronald A. Simank
   State Bar No. 18359400
   Federal ID No. 0359
   rsimank@cctxlaw.com

**ATTORNEYS FOR DEFENDANT
AEP TEXAS INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to the following counsel of record on this the 2nd day of December, 2020:

***VIA E-FILE and EMAIL:***
John Swallow
Huseman Law Firm
615 N. Upper Broadway, Ste. 2000
Corpus Christi, Texas 78401
jswallow@husemanlawfirm.com

/s/ G. Don Schauer
G. Don Schauer

60.407 Cude
Pldgs/AEP's Mtn to Exclude
Expert Test. Of B. Winkfein

Page 14